**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Allied Waste North America, Inc., | ) | No. CV 07-1596-PHX-MHM |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| ITS Enterprises, Inc., | ) ) | |
| Defendant. | ) ) ) | |

Pending before the Court is Plaintiff Allied Waste North America Inc.'s ("Allied's") Motion for Summary Judgment. (Doc. # 37) Having reviewed the Motion, the Response and Reply thereto, and the record before it, the Court now enters its ruling.

**I.   Background**

The following facts, taken from Allied's Separate Statement of Facts ("PSOF"), are uncontroverted.[1]  Allied is a waste collection company. ITS Enterprises, Inc. ("ITS") is a temporary staffing agency that provides temporary labor to waste companies such as Allied, Waste Management, and IESI waste. ITS's employees perform administrative work, yard work, and stand on the back of waste trucks assisting in the collection of refuse.

---

[1] Defendant ITS failed to controvert Allied's Separate Statement of Facts as required by LR Civ. 65.1(b) and therefore these facts are "deemed admitted for the purposes of the motion for summary judgment."

1  Allied and ITS entered into a Temporary Labor Service Agreement (the "Contract")
2 on April 20, 2005. At the time it signed the contract, ITS was furnishing temporary labor to
3 Allied without a formal contract. Allied informed ITS that it required a written contract in
4 order to continue the parties' relationship.
5  The Contract required ITS to purchase and maintain certain types and levels of
6 insurance, including comprehensive, general and contractual liability coverage in the amount
7 of $5 million dollars and add Allied as an additional insured under these policies. Paragraph
8 9 of the Contract states that ITS shall:

> at all times . . . maintain in full-force and effect insurance coverage for Employer's Liability, Workers' Compensation, Comprehensive General and Contractual Liability and Comprehensive Automotive Liability, including contractual liability coverage for the indemnity provisions of Paragraph 16 . . . .

(Doc. # 38, Ex. B, ¶9)

 The Contract further required ITS to defend and indemnify Allied against liability arising out of the Contract. Paragraph 16 states, in pertinent part, that ITS shall:

> defend, hold harmless and unconditionally indemnify [Allied] . . . from and against all claims, demands, causes of action, liabilities, costs, expenses (including attorneys' fees, court costs, and expenses of investigation) . . . Allied may at any time suffer or sustain or become liable for by reason of any accidents, damages, violations or injuries (including injuries resulting in death) either to the employees or property of both of [ITS] or [Allied], or to any other person or entity . . . in any manner caused by or resulting from: (I) ITS's breach of this Agreement, (ii) acts or failures to act by [ITS] or its Personnel or agents, or (iii) the work performed by [ITS] or its Personnel or agents in relation to this Agreement, including those claims, demands, causes of action, liabilities, costs, expenses, and damages based on accidents, damages or injuries arising from [Allied's] sole negligence, fault or strict liability. It is the parties' intent that [ITS's] obligations . . . are intended to protect [Allied] against the consequences of their own negligence, fault or strict liability.

(Doc. # 38, Ex. B, ¶16).

 The Contract also contains an entireties clause which states as follows:

> "This Agreement . . . constitutes the entire agreement and understanding between the parties and supersedes any prior agreements, whether written or oral, relating to the subject matter of this Agreement. This Agreement may be modified or supplemented by the parties only if done in writing and signed by an authorized representative of each party.

(Doc. # 38, Ex. B, ¶19)

- 2 -

In May 2007, the estate of Marvin Sneed filed its third amended complaint against Allied captioned "EARTHAE M. SNEED, Individually and as Representative of the Estate of MARVIN SNEED, Jr., Deceased v. Allied Waste Services, Inc., Perry Lynn McCall, and Southwestern Bell Telephone, L.P., 172nd District Court of Jefferson County, Texas, Cause No. E178-018 (the "Lawsuit"). (Doc. # 38, Ex. C) The Lawsuit alleges that Allied was negligent in causing the death of Mr. Sneed. The suit arose from an incident wherein the Allied refuse truck on which Mr. Sneed was working snagged a low-hanging telephone wire and consequently pulled down a connected telephone pole. The pole struck Mr. Sneed in the head, causing him to sustain fatal injuries.[2]

Accordingly, Allied tendered the Lawsuit to ITS for defense and indemnification pursuant to paragraph 16 of the Contract and demanded a copy of the commercial general liability policy ITS purchased pursuant to Paragraph 9. In so doing, Allied discovered that ITS had purchased a commercial liability policy in a lesser amount than required by the Contract and had not added Allied as an additional insured to the policy. ITS thereafter denied Allied's tender of defense and indemnification.

On July 20, 2007, Allied filed a Complaint in Maricopa County Superior Court alleging a breach of contract claim and requesting a declaratory judgment that ITS is required to defend and indemnify Allied in the Lawsuit, to pay all associated attorneys' fees, costs, and other litigation expenses, and to indemnify Allied against any judgment the plaintiff might obtain in the Lawsuit. (Doc. # 4) Allied also requested an award of damages as well as pre- and post-judgment interest thereon, and reasonable attorneys' fees and costs incurred in the present case. On August 20, 2007, ITS removed the action to the District Court. (Doc. # 1)

On May 28, 2008, Allied filed the instant Motion for Summary Judgment, requesting that judgment be granted in its favor on its claim for breach of contract. (Doc. # 37) In

---

[2] Allied notes in its Reply brief that it recently obtained summary judgment in the Texas lawsuit.

- 3 -

1 response, ITS does not deny that it breached the contract, but asserts the defenses of
2 unconscionability and unilateral mistake.

3 **II.    Standard of Review**

4   A motion for summary judgment may be granted only if the moving party shows "that
5 there is no genuine issue of material fact and that the moving party is entitled to judgment
6 as a matter of law." Fed. R. Civ. P. 56(c). To defeat a motion, the non-moving party must
7 show that there are genuine factual issues "that properly can be resolved only by a finder of
8 fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty
9 Lobby, Inc., 477 U.S. 242, 250 (1986). The party opposing summary judgment "may not rest
10 upon mere allegations or denials of [the party's] pleadings, but . . . must set forth specific
11 facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). See also
12 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[T]here
13 is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury
14 to return a verdict for that party." Anderson, 477 U.S. at 249.

15 **III.   DISCUSSION**

16   **A.    Unconscionability**

17   ITS argues that the indemnity provision of the Contract is "substantively
18 unconscionable and should not be enforced" based on "ITS's potential exposure to Allied
19 versus the revenue generated to ITS from the Contract." The determination of
20 unconscionability is a question of law for the courts. Maxwell v. Fidelity Fin. Servs., Inc.,
21 184 Ariz. 82, 87, 907 P.2d 51, 56 (1995). "Substantive unconscionability is an unjust or
22 'one-sided' contract." Id. at 89, 907 P.2d at 58. "Substantive unconscionability concerns the
23 actual terms of the contract and examines the relative fairness of the obligations assumed.
24 Indicative of substantive unconscionability are contract terms so one-sided as to oppress or
25 unfairly surprise an innocent party, an overall imbalance in the obligations and rights
26 imposed by the bargain, and significant cost-price disparity." Id. (Citation omitted).

27   The Court must examine the Contract "in the light of the general commercial
28 background and the commercial needs of the particular trade or case." 184 Ariz. at 88, 907

- 4 -

1  P.2d at 57. Substantive unconscionability must be determined at the time of contracting,
2  because to "judge the substantive fairness of a contract at a subsequent date would nullify
3  many contracts entailing a speculative element." Seeking v. Jimmy GMC of Tucson, Inc.,
4  130 Ariz. 596, 602, 638 P.2d 210, 216 (1981). "A bargain is 'unconscionable' if it is "such
5  that no man in his senses and not under delusion would make on the one hand, and as no
6  honest and fair man would accept on the other." Broemmer v. Otto, 169 Ariz. 543, 547, 821
7  P.2d 204, 208 (App. 1991), vacated in part on other grounds, 173 Ariz. 148, 840 P.2d 1013
8  (1992) (quoting Restatement (Second) of Contracts § 208, cmt. b (1979)).

9      ITS argues that Allied is a large, sophisticated national corporation whereas ITS "is
10 a small staffing company doing business in Texas with eight (8) total in-house employees."
11 (Doc. # 40, Defendant's Separate Statement of Facts ("DSOF") ¶3, 4) ITS contends that
12 because it did not interview or train Mr. Sneed (he was formerly employed by Allied's
13 predecessor and referred by Allied to ITS), ITS "served essentially a payroll and human
14 resources function with regard to him." (Doc. # 40, Ex. C) ITS argues that "Allied is
15 inequitably seeking to impose an enormous obligation on ITS to defend and indemnify Allied
16 for its sole negligence, while in return ITS is paid a small fee to provide human resource type
17 services." ITS maintains that Allied's liability-shifting scheme is "oppressive, one-sided and
18 unfair."

19     Although ITS attempts to portray itself as a tiny, unsophisticated business entity at the
20 mercy of the Goliath, Allied, the record demonstrates otherwise. In his deposition, Mr. Robert
21 Frank, ITS's president, testified that ITS has an office in both Beaumont[3] and Austin and, in
22 addition, has "some accounts in the surrounding areas." (Doc. # 38, Ex. A, p. 23) Mr. Frank
23 testified that ITS has approximately 20 active accounts at this time. (Id., p. 14) Allied is not
24 its largest account. (Id., p. 23) ITS, along with its predecessor Intouch Staffing, has been in
25 business for eight years, and Mr. Frank has been president since its inception. (Id., p. 6-7)
26 In 2006, ITS reported approximately $9.6 million dollars in gross revenue and $1.2 million
27
28     [3] The Allied account was serviced by the Beaumont office.

dollars in net revenue. (Doc. # 38, Ex. I) Mr. Frank testified that as a result of entering into the contract with Allied in 2005, ITS has earned approximately $200,000 in yearly gross profits and approximately $450,000 in total gross profits as of the deposition date. (Id., Ex. A, pp. 24-25) Mr. Frank testified that he signed the Contract because he "didn't want to take a chance on losing it to someone else." (Id., p. 122).

Accordingly, the record shows that ITS is not an "innocent party" that would be oppressed or unfairly surprised by the terms of the Contract, as contemplated by the court in Maxwell. 184 Ariz. at 87, 907 P.2d at 56. The record demonstrates that ITS is an experienced and profitable business entity whose president made an informed business decision to enter into the Contract. Presumably, ITS also made a business decision to not add Allied as an additional insured to its insurance policies and to not obtain the required insurance. Given the value of Allied's business to ITS at the time it entered the Contract and the revenue ITS generated as a result, there is no basis to conclude that "no man in his senses" would not have entered into the Contract. See Broemmer, 169 Ariz. at 547, 821 P.2d at 208.

Furthermore, Arizona law "permits a party to protect itself contractually by shifting liability for its faults to another via the mechanism of indemnity." Grubb & Ellis Mgmt. Servs., Inc. v. 407417 B.C., L.L.C., 213 Ariz. 83, 86, 138 P.3d 1210, 1213 (App. 2007). See also Wash. Elem. Sch. Dist. No. 6 v. Baglino Corp, 169 Ariz. 58, 61, 817 P.2d 3, 6 (1991) (stating that "contracts indemnifying a party against his own negligence do not violate public policy."); James v. Burlington Northern Santa Fe Ry. Co., No. CV 05-04106-PCT-NVW, 2007 WL 2461682 (D. Ariz. Aug. 27) (holding that the parties are entitled to protect themselves contractually by shifting liability through indemnity provisions).

Under similar facts, the Third Circuit has held that "[i]t is well-settled that parties can allocate financial responsibility for the consequences of negligence as they see fit." Bainville v. Hess Oil V.I. Corp., 837 F.2d 128, 130 (3rd Cir. 1988). In Bainville, the parties entered into a temporary labor service agreement in which the labor company agreed to indemnify the employer against "any suits, claims, demands, judgments or causes of action for personal injury" arising under the agreement." Id. at 131. The employer later demanded

- 6 -

1 indemnification from the labor company for injuries sustained by one of the employer's
2 employees. Id. at 130. The labor company denied tender. The Third Circuit Court of
3 Appeals affirmed the district court's grant of summary judgment, finding that the
4 indemnification clause was enforceable:

> Such contractual indemnity clauses are typically drafted to cover the circumstances created by agreements between the companies which contract out jobs and general contractors which perform them . . . [however], [t]his capacity to shift financial responsibility by contract naturally includes the capacity to contractually allocate financial responsibility . . . .

8 Id.

9 Accordingly, based on the foregoing, the Court finds that the Contract's indemnity
10 provision is not unconscionable and thus the provision is enforceable.

11 ITS also argues that even if the Contract is not unconscionable, it is unenforceable
12 because it did not meet ITS's reasonable expectations. The "reasonable expectations"
13 doctrine "relieves a party from 'certain clauses of an agreement which he did not negotiate,
14 probably did not read, and probably would not have understood had he read them.'"
15 Philadelphia Indem. Ins. Co. v. Barerra, 200 Ariz. 9, 14, 21 P.3d 395, 400 (2001) (quoting
16 Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co., 140 Ariz. 383, 394, 682 P.2d
17 388, 399 (1984)). In Darner, the plaintiff relied on his insurance agent's representations of
18 coverage that contradicted the terms of the agreement. 140 Ariz. 383, 385-87, 682 P.2d 388,
19 390-92. Relying on the agent's representation, the plaintiff did not read the "lengthy and
20 forbidding" policy because "it was like a book," and, following his conversations with the
21 agent, he "didn't think [he] needed to." Id. at 386, 682 P.2d at 391.

22 Here, in contrast, Allied did not make any representations to Mr. Frank. (Doc. # 38,
23 PSOF ¶14) The Contract was not "lengthy and forbidding." (Doc. #38, Ex. B) The
24 indemnity provision was not written in fine print but in the same font size as the other
25 provisions of the Contract using ordinary language. (Id.) Mr. Frank read the Contract. (Id.,
26 PSOF ¶13) Mr. Frank admitted that the indemnity provision states that ITS agreed to defend
27 and indemnify Allied against allegations that Allied's drivers were negligent and that it was
28 reasonable for Allied to believe ITS would do so. (Id., ¶¶13, 35-37, 44-45) In light of the

- 7 -

foregoing, the Court finds that the doctrine of reasonable expectations does not apply and thus the Contract is enforceable.

ITS further argues that the indemnity provision should be voided because the Contract is "one of adhesion because ITS did not have a meaningful choice as to whether or not to sign" it. An adhesion contract, however, is fully enforceable according to it terms unless it is unconscionable or does not fall within the reasonable expectations of the adhering party. Huff v. Bekins Moving & Storage Co., 145 Ariz. 496, 498, 702 P.2d 1341, 1343 (App. 1985). In light of the Court's determination above that the Contract's indemnity provision is not unconscionable and that the doctrine of reasonable expectations does not apply, the Court need not address this issue because in any event, the Contract is fully enforceable.

**B.     Unilateral Mistake**

ITS argues that a genuine issue of material fact exists with respect to its defense of unilateral mistake. A party's unilateral mistake is not sufficient to set aside a contract. McMillon v. Town of Flagstaff, 18 Ariz. 536, 538-39, 164 P. 318-319 (1917). However, an agreement is voidable if the other party knew or should have known that the first party was mistaken. Parrish v. United Bank, 164 Ariz. 18, 20, 790 P.2d 304, 306 (App. 1990).

Mr. Frank admitted that under Paragraph 16, the indemnification provision, ITS is contractually obligated to defend and indemnify Allied against allegations that Allied or its employees were negligent. However, Mr. Frank testified that he "made a mistake when he signed [the Contract]" because he understood Paragraph 16 to not apply to injuries caused by a driver. This misunderstanding was based on his interpretation of Paragraph 1, which provides that ITS would not furnish personnel to work as "drivers, heavy duty operators, spotters, or scale operators." (Doc. # 40, DSOF ¶13-15)

ITS first argues that Allied knew or should have known about this mistake because "a verbal agreement existed between ITS and Allied that ITS would not be liable for any injuries caused by a driver," and Allied knew of this business practice at the time Mr. Frank signed the Contract. (Id., ¶21) ITS admits that this "verbal understanding" is not "specifically

- 8 -

1 outlined in the Contract" but maintains that "it is nevertheless part of ITS's total agreement
2 with Allied." (Id., ¶23)

3       Evidence in the record demonstrates that Mr. Frank could not have been the ITS
4 employee who allegedly entered into a verbal agreement with Allied: Mr. Frank testified that
5 he did not speak to anyone at Allied about the Contract prior to signing it. (Doc. # 38, PSOF
6 ¶14; PSSOF ¶¶4-5) Mr. Frank further testified that no one in the Beaumont office had any
7 direct dealings with Mr. R. A. Alberco, Allied's signatory to the contract. (Doc. # 40, PSSOF
8 ¶5) If Mr. Frank is alleging that someone other than himself entered into the alleged verbal
9 agreement with Allied, he does not have the personal foundation to testify to this issue, see
10 Fed. R. Evid. 602, and therefore any testimony offered at trial would be inadmissible hearsay.
11 Only admissible evidence may be considered by the court in ruling on a motion for summary
12 judgment. Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988).

13       ITS also argues that "Allied was put on notice that ITS was operating under the
14 abovementioned mistake when it accepted ITS's certificate of insurance and continued
15 conducting business with ITS" despite ITS failure to obtain the requisite insurance. At his
16 deposition, Mr. Frank testified that ITS sent Allied a copy of ITS's certificates of insurance
17 along with the Contract. When questioned about this issue, however, Mr. Frank admitted that
18 he personally did not provide the certificates to Allied, but that it was Rich Willis, who was
19 in charged of obtaining insurance coverage for ITS, who would have done so. (Doc. # 38, Ex.
20 A, pp. 66-71) Mr. Frank further testified that he did not know how the certificates were sent -
21 by letter, fax or email - nor did he know if there was a record of the transmittal. (Id.) Mr.
22 Frank did not know when the certificates were sent or who at Allied received them. (Id., p.
23 70) Accordingly, as discussed above, Mr. Frank does not have the personal foundation to
24 testify to this issue, and any testimony offered at trial would be inadmissible hearsay.

25       Further, in its response to Allied's discovery requests, ITS did not disclose any
26 documents supporting Mr. Franks's claim that ITS had provided Allied with certificates of
27 insurance when it sent the Contract. At his deposition, Mr. Frank agreed to review ITS's
28 records for any documents that would support his contention in this regard and disclose them

- 9 -

1  to his counsel. (Id., p. 71) No documents have been disclosed to date, nor has ITS supported
2  its response to the summary judgment motion with an affidavit from Rich Willis, or any other
3  employee, attesting that it was he or she who sent the certificates to Allied.

4  When assessing the record to determine whether there is a genuine issue for trial, the
5  court must "view the evidence in the light most favorable to the nonmoving party, drawing
6  all reasonable inferences in his favor." Horphag Research Ltd. V. Garcia, 475 F.3d 1029,
7  1035 (9th Cir. 2007). "Nevertheless, inferences are not drawn out of the air, and it is the
8  opposing party's obligation to produce a factual predicate from which the inference may be
9  drawn." Yang v. Peoples Benefit Ins. Co., No. CIV F 06-458 AWI DLB, 2007 WL 1555749,
10 at *7 (E.D. Cal. May 25, 2007). Here, ITS has produced no factual predicate from which the
11 Court can draw an inference in its favor with respect to its arguments regarding the existence
12 of a unilateral mistake. Accordingly, because ITS has failed to come forward with sufficient
13 evidence showing that there is a genuine issue for trial, Allied is entitled to summary
14 judgment as a matter of law.

15 **IV.   CONCLUSION**

16 ITS has failed to raise a genuine issue of material fact with respect to its defenses of
17 unconscionability and unilateral mistake. Accordingly,

18 **IT IS ORDERED** granting Allied's Motion for Summary Judgment on its claim for
19 breach of contract. (Doc. # 37)

20 **IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment
21 accordingly.

22 DATED this 24th day of March, 2009.

Mary H. Murgula
United States District Judge